## No. 12,577.

MUTTER *v.* BURGESS ET AL.
(290 Pac. 269)

Decided June 23, 1930.

Mr. A. A. CLEMENTS, Mr. C. H. STEWART, for plaintiff in error.

Messrs. BURGESS & ADAMS, pro se.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

L. W. BURGESS and E. B. Adams, engaged in the prac-

tice of law under the firm name of Burgess and Adams, herein called the plaintiffs, sued A. M. Mutter, herein called the defendant, for the balance of a fee claimed to be due them under a contract. They recovered a judgment for $800, the full amount demanded, which judgment Mutter seeks to reverse.

The question presented for our decision concerns the right of lawyers to recover for their services when they withdraw from a case before the full performance of the services they agreed to perform. On March 21, 1929, the defendant employed the plaintiffs as his attorneys in an action brought against him by one Lynch for alienating the affections of Lynch's wife. The contract was in writing. The defendant agreed to pay a retainer of $1,000 at once. If a judgment should be rendered against the defendant for less than $1,500 the defendant was to pay an additional sum of $500. In the event of a dismissal of the action or a verdict in favor of the defendant, he was to pay $1,500 in addition to the $1,000. He paid only $200 on account. The plaintiffs had numerous conferences with the defendant concerning the case; briefed the law on the subject; prepared, filed and argued a motion; prepared and filed an answer; examined documentary evidence; and did what they could to prepare for trial. They repeatedly, though ineffectually, urged the defendant to bring in his witnesses so that the plaintiffs could ascertain what their testimony would be. On August 29 the defendant went to the office of the plaintiffs and accused them of having sold him out in the Lynch case; said that they and Hinman (Lynch's lawyer) had "framed" the case and fixed it all up before the defendant signed the contract; that they had "double-crossed" him or "crooked" him; that they were "as bad as the Lynches in trying to get money out of" him, and that that is all they were after. After this conversation the plaintiffs withdrew from the Lynch case, and the defendant employed other lawyers. Later the plaintiffs brought this

action to recover $800, the balance claimed to be due under the contract.

1. In withdrawing, they did what any self-respecting lawyers would have done. The relation between lawyer and client is of a confidential and delicate nature. Within ethical limits, the lawyer owes entire devotion to his client's interest. The accusations made by the defendant are of the most serious nature. If the plaintiffs were guilty of the misconduct charged, they would be unfit to practice the profession of the law, and should be, and no doubt would be, disbarred. The accusations, however, were utterly false. At the trial the defendant did not claim, or even intimate, that they were true. The conduct of the defendant made it practically impossible for his attorneys to continue the performance of their contract. It was equivalent to a discharge of the plaintiffs as his attorneys. In *Genrow v. Flynn,* 166 Mich. 564, a client sent to his attorneys a telegram falsely charging them with deceiving, lying and neglecting him, and stating that he did not intend to stand their abuse any longer. The court held that this was equivalent to a discharge of the attorneys and said, inter alia: "We are constrained to say that, under the undisputed evidence in the case, it was not a breach of duty or contract for the defendants to decline to proceed further under the circumstances. Certainly no reputable attorneys could continue in a case after the receipt of such a telegram from a client. We think that the plaintiff by his own act practically made it impossible for the defendants to perform their contract. * * * such conduct is equivalent to a discharge of his counsel, and a breaking off of the confidential and delicate relation theretofore existing between them. Such conduct must result in the destruction of all faith in each other and render it impossible for them to further cooperate."

2. Counsel for the defendant contend that, assuming that the plaintiffs were discharged without cause, they were not entitled to sue on the contract, but should

have sued on a quantum meruit, or for damages for breach of contract, in which event, it is claimed, the judgment would be less than $800. According to what we believe to be the weight of authority, the plaintiffs were entitled to recover the $800 in this action on the contract. In *Kikuchi v. Ritchie*, 121 C. C. A. 215, 217, the court said: ''The general rule as to damages in cases of breach of contract for personal employment is that the employe can recover only the difference between what he received or might have received from others and the price agreed upon. But the contract of employment of an attorney by a client is recognized as an exception to the rule. One reason for the exception is that such service is not easily partible or apportioned to the time or the labor performed or to be performed by the attorney. Another reason is that often the most difficult and valuable services of the attorney to his client are rendered in advising him of his legal rights before any papers are prepared or appearances made in court. Another is that by the contract the attorney loses the possible opportunity of employment by the adversary party.'' In *Teiser v. Barlow*, 97 Ore. 410, 414, 192 Pac. 394, it is said: ''The contract provides in effect that plaintiffs should, in any event, receive $1,000 for their services, and this was a fixed and irreducible minimum, which was to be paid without reference to how the litigation, in regard to the estate, might terminate even though the defendants should receive nothing. The only fact which would defeat a recovery by plaintiffs of this sum would be a breach of the contract on their part; therefore, on their theory that they had been faithfully engaged in the performance of their duty under the contract, and had been prevented from proceeding to fulfill it completely by an unjustifiable breach by defendants, they were entitled to recover this $1,000 in any event. As to that sum, their right to recover became fixed when they were discharged, if the discharge was without legal justification.'' In *City of Detroit v. Whittemore*, 27 Mich. 281, the following language ap-

pears in the opinion written by Mr. Justice Cooley: ''An attorney employed to carry a suit through for an agreed sum has a vested right to the compensation when he accepts and begins the service; and he cannot be lawfully deprived of it except by his own consent or through his own default or misconduct. If he is discharged from the employment before the service is completed, he may recover the whole sum; * * * because of the manifest impossibility of making an apportionment of the services and compensation, when the parties themselves by their contract expressly abstained from making any, and may in fact be said to have agreed that none should be made.'' See also *Genrow v. Flynn, supra; Thompson v. Stearns,* 208 Mo. App. 338, 234 S. W. 1059; *Dorshimer v. Herndon,* 98 Neb. 421, 53 N. W. 496.

The judgment was right. It is affirmed.

Mr. Chief Justice Whitford, Mr. Justice Moore and Mr. Justice Burke concur.